UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOD SAMARITAN HOSPITAL, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>MULTIPLAN, INC., et al.,<br><br>Defendants. | Case No. 22-cv-02139-AMO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 92 |

Before the Court is Plaintiff's Motion to Remand. The matter is fully briefed and suitable for decision without oral argument. *See* Civ. L.R. 7-6. Accordingly, the hearing set for July 6, 2023, was vacated. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby rules as follows.

## BACKGROUND

Plaintiff Good Samaritan Hospital, L.P. ("Good Samaritan"), is a 474-bed acute care hospital in San Jose, California, that operates a 24-hour emergency room and includes a state-of-the art NICU center for the care of infants. Second Amended Complaint ("SAC") ¶ 4. Good Samaritan is a citizen of Tennessee and Delaware. Defendant MultiPlan, Inc. ("MultiPlan"), is a health network provider that arranges, manages, and offers national preferred provider organization plans. SAC ¶ 5. MultiPlan is a citizen of New York. Defendant Trustmark Health Benefits, formerly known as CoreSource, Inc. ("Trustmark") is a third-party administrator of healthcare benefits who acts on behalf of employers to administer health care benefits in accordance with the terms of the health plans and the terms of the contracts between plans and providers. SAC ¶ 6. Trustmark is a citizen of both Illinois and Delaware. Altimetrik Corp. ("Altimetrik") is a data and digital engineering corporation with Michigan citizenship.

**A.     Factual Background**

MultiPlan and Good Samaritan operate in accordance with the MPI Participating Facility Agreement (the "Network Agreement"). SAC ¶ 16. Through this Network Agreement, Good Samaritan agreed to participate in MultiPlan's network and accept payment for services at discounted rates for Good Samaritan's otherwise applicable billed charges, in part based on the assurance that MultiPlan would ensure timely compensation to Good Samaritan in accordance with the terms of the Network Agreement for services rendered to members of the plans sold by MultiPlan. SAC ¶ 17. This case arises out of Defendants' alleged failures to honor and properly apply the Network Agreement. That is, Good Samaritan avers that Defendants have refused to properly pay for the medically necessary services provided to an infant patient. SAC ¶ 30.

Good Samaritan asserts that Defendants "fail[ed] to pay or cause payment for" medical services in excess of $970,000. SAC ¶ 3. Plaintiff alleges that the bill in question was underpaid, in part, because Defendants applied improper Line Item Disallowances ("LIDs"), unilaterally striking portions of Good Samaritan's charges. SAC ¶ 31. The Network Agreement prohibits such unilateral adjustments to billed charges. SAC ¶ 32. Good Samaritan also alleges that Defendants further underpaid the bill by improperly deeming the medical level of care provided by Good Samaritan, as purportedly non-medically necessary or justified, and then applying a lower rate than what the contract required for the medically necessary services. SAC ¶ 39.

Good Samaritan asserts ten contract-based state law causes of action against Defendants relating to purported breaches of the Network Agreement:

1. Breach of written contract against MultiPlan;
2. Breach of written contract against Trustmark;
3. Breach of written contract against Altimetrik;
4. Breach of implied covenant of good faith and fair dealing against MultiPlan;
5. Breach of the Client Trust Agreement against Trustmark – Third party beneficiary;
6. Breach of the User Agreement against Altimetrik – Third party beneficiary;
7. Intentional interference with contractual relations and/or prospective economic advantage against MultiPlan;

8. Intentional interference with contractual relations and/or prospective economic advantage against Trustmark;

9. Intentional interference with contractual relations and/or prospective economic advantage against Altimetrik; and

10. Relief from forfeiture against all Defendants.

**B.     Procedural Background**

On February 8, 2022, Plaintiff Good Samaritan filed its initial complaint in the Santa Clara Superior Court against Defendants MultiPlan, Trustmark, and Altimetrik. ECF 1, Ex. D.

On April 4, 2022, Defendant Trustmark filed a notice of removal solely "on the basis of diversity jurisdiction under 28 U.S.C. § 1332," with the consent of all other Defendants. ECF 1. The notice of removal alleged "complete diversity of citizenship" between the parties based on the assertion that "Plaintiff is a citizen of California," "Trustmark is a citizen of Delaware and Illinois, Multiplan is a citizen of New York, and Altimetrik is a citizen of Michigan for removal and diversity purposes." ECF 1, ¶ 2. At the time, no party contested removal.

Following some amendments to the pleadings, Plaintiff filed the instant Motion to Remand on May 19, 2023. ECF 92. Defendant Altimetrik filed an opposition brief (ECF 95),[1] which Trustmark joined (ECF 97).

**DISCUSSION**

Good Samaritan moves to remand on the basis that diversity of citizenship is lacking where it and Defendant Trustmark are both corporate citizens of the State of Delaware. ECF 92 at 5-7. Because diversity is not complete, Good Samaritan reasons, subject matter jurisdiction is lacking and the case should be remanded. Defendants counter that the case should not be remanded because federal subject matter jurisdiction exists based on federal question jurisdiction because the claims are completely preempted by ERISA.

---

[1] Defendant Altimetrik moves to seal portions of its brief opposing remand as well as certain agreements underlying Plaintiff's claims. ECF 100. That administrative motion is considered in a separate order.

3

**A.    Legal Standard**

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). "A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Grounds for remand include either lack of subject matter jurisdiction or a procedural defect in the notice of removal. *See, e.g.*, *Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Maniar v. F.D.I.C.*, 979 F.2d 782, 784-85 (9th Cir. 1992) (citing 28 U.S.C. § 1447(c)). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted).

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant," and "[a]bsent diversity of citizenship, federal-question is required." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Whether federal question jurisdiction exists "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* Thus, federal question jurisdiction cannot rest upon an actual or anticipated defense or counterclaim. *Id.*; *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). Thus, an action can only be removed to federal court "where original federal jurisdiction exists" – "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id.*

**B.    Federal Question – ERISA and Complete Preemption**

"Ordinarily, federal question jurisdiction does not lie where a defendant contends that a state-law claim is preempted by federal law." *Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011) (citations omitted). "But state-law claims may be removed to federal court if the 'complete preemption' doctrine applies." *Id.* (citations omitted). "ERISA § 502(a) sets forth a comprehensive civil enforcement scheme that completely preempts state-law causes of action within the scope of these civil enforcement provisions." *Id.* (alterations

4

and internal quotation marks omitted) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004)). "Thus, [Section] 502 dictates whether a federal court can exercise jurisdiction over a particular claim for benefits." *Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1270 (9th Cir. 2019). "According to its terms, an action to recover benefits due under the terms of a plan to enforce rights under the terms of the plan, or to clarify rights to future benefits will be heard in a federal court." *Id.* (simplified).

Under the test set out by the Supreme Court in *Davila*, ERISA completely preempts a state-law claim if: "(1) the individual could have brought his claim under this ERISA provision; and (2) no other independent legal duties are implicated by the defendant's actions." *Rudel*, 542 U.S. at 1269 (citing *Davila*, 542 U.S. at 210). To show complete preemption, both elements must be met. *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1059 (9th Cir. 2018). The Court considers each element in turn.

### 1. The First Prong

The first prong of the *Davila* test asks "whether a plaintiff seeking to assert a state-law claim at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009) (simplified) (citing *Davila*, 542 U.S. at 210). As summarized by the *Davila* court, Section 502(a)(1)(B), otherwise known as ERISA's civil enforcement provision, provides that:

> If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits.

*Davila*, 542 U.S. at 210.

Here, though Defendants argue that the first *Davila* prong is met, Good Samaritan could not have brought its claim for breach of contract under ERISA § 502(a)(1)(B). Good Samaritan is neither a "participant" nor a "beneficiary" of an ERISA plan as those terms are defined in the statute. *See* 29 U.S.C. § 1132(a). Thus, Good Samaritan is not empowered to bring a civil action under Section 502(a). Though a plan participant could have ostensibly assigned their Section 502 claim to Good Samaritan, that is not the case at bar. This is not a suit evaluating a plan

participant's entitlement to benefits, and Good Samaritan could not have brought such a claim. The first *Davila* prong is not satisfied, the case is not completely preempted by ERISA, and this case should be remanded. In the interest of completeness, the Court proceeds to assess the second *Davila* prong below.

### 2. The Second Prong

The second inquiry in the Court's analysis under *Davila* is "whether a claim relies on the violation of a legal duty that arises independently of the plaintiff's, or their assignor's, ERISA plan." *Hansen*, 902 F.3d at 1059 (citing *Davila*, 542 U.S. at 210). "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Id.* (quoting *Marin Gen. Hosp.*, 581 F.3d at 949).

In *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 948 (9th Cir. 2009), the plaintiff brought state law claims arising out of an alleged verbal promise to pay 90% of the hospital's charges. The appellate panel determined that the promise to pay created a legal duty independent from a claim for benefits under ERISA because the promise to pay 90% of billed charges was not a matter of plan interpretation. *Id.* at 948-49. Similarly, in *Blue Cross of California v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999), plaintiff providers sued Blue Cross to recover for alleged breaches of contracts between Blue Cross and the providers, and the Ninth Circuit determined that those contracts created independent legal duties.

Here, Good Samaritan advances breach of contract and interference claims based on Defendants' respective obligations owed to it under the Network Agreement. Like the contractual claims at issue in both *Marin General Hospital* and *Blue Cross of California*, Defendants' legal duties to Good Samaritan are independent of the patient's right to benefits under an ERISA plan. Good Samaritan's claims do not require an assessment of whether care provided was covered under an employee benefit plan. The Network Agreement is a service contract establishing Good Samaritan's right to payment, not an ERISA plan document that grants Defendants discretion to determine coverage. In sum, Good Samaritan's contractual claims arise independently from an assessment of coverage, thus the second *Davila* prong is not satisfied.

6

Having determined that there is no federal question jurisdiction because there is not complete preemption under ERISA, the Court turns to whether it has diversity jurisdiction over the matter.

### C.     Diversity of Citizenship

To establish jurisdiction based on diversity, a party must show an amount in controversy in excess of $75,000 and complete diversity of citizenship between the parties.  28 U.S.C. § 1332.  Diversity jurisdiction "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  Limited Partnerships are citizens of all the states of which its partners are citizens, and "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

Trustmark removed this lawsuit based on diversity jurisdiction under Title 28 U.S.C. § 1332.  In its removal papers, it stated, "Plaintiff is a citizen of California, Trustmark is a citizen of Delaware and Illinois, Multiplan is a citizen of New York, and Altimetrik is a citizen of Michigan for removal and diversity purposes."  ECF 1 at 2.  Good Samaritan has finally investigated and determined that this was incorrect – it is not a citizen of California.  Good Samaritan, a limited partnership, is instead a citizen of Delaware and Tennessee.  ECF 92 at 5-7.  Defendant does not rebut this determination at all, spending its opposition brief focused on the assessment of federal question jurisdiction as discussed above.  Both Plaintiff Good Samaritan and Defendant Trustmark are citizens of the State of Delaware, and complete diversity does not exist between the parties.  Therefore, the Court does not have diversity jurisdiction over this matter.

//

//

//

//

//

**CONCLUSION**

Because both federal question and diversity jurisdiction are lacking, the Court GRANTS Plaintiff's Motion to Remand.  This case is hereby remanded the Superior Court of California for the County of Santa Clara.

**IT IS SO ORDERED.**

Dated: September 15, 2023

									_____
									**ARACELI MARTÍNEZ-OLGUÍN**
									**United States District Judge**